IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONELL NETTLES,
    *Petitioner*,

v.

UNITED STATES OF AMERICA,
    *Respondent*.

Civil Action No. ELH-13-2540
Criminal No. ELH-12-0294

**MEMORANDUM OPINION**

Petitioner Donell Nettles seeks post-conviction relief under 28 U.S.C. § 2255. On September 3, 2013, Nettles filed a "Motion to Vacate, Set Aside, or Correct Sentence" under 28 U.S.C. § 2255 ("Motion to Vacate," ECF 54).[1] In particular, Nettles posits seven grounds, including that his counsel was ineffective because he failed to hold an evidentiary hearing on his motions to suppress evidence and to suppress statements. He also contends that on December 11, 2012, he involuntarily entered his guilty plea to the charge of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). ECF 30; *see* "Plea Agreement" (ECF 57-1 ¶ 1).

The Government filed an opposition (ECF 57), along with several exhibits: a copy of the Plea Agreement (ECF 57-1); a transcript of Nettles's rearraignment ("Rearraignment Transcript," ECF 57-2); a copy of Nettles's motion to voluntarily dismiss his appeal (ECF 57-3); and a transcript of Nettles's sentencing hearing ("Sentencing Transcript," ECF 57-4). Nettles timely filed a Reply ("Reply," ECF 59). The Motion to Vacate is ripe for decision, and no hearing is necessary to resolve it. *See* Local Rule 105.6. Because the Motion to Vacate and the

---

[1] Although Nettles was represented by counsel at trial and during his initial appeal, he is now self-represented.

record conclusively show that Nettles is not entitled to relief on the grounds asserted, I will deny the Motion to Vacate. *See* 28 U.S.C. § 2255(b); *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

**Background**[2]

On December 9, 2011, at approximately 10:40 p.m., the Maryland State Police ("MSP") conducted a traffic stop of a Toyota Highlander in Carroll County, Maryland. The vehicle was traveling at 48 miles per hour in a 40 miles per hour zone. Nettles was identified as the driver and the owner of the vehicle. Another person was traveling in the front passenger seat.

MSP requested a drug sniffing dog to scan the vehicle based on the following observations: a strong smell of cologne coming from the vehicle; the vehicle was dirty and cluttered; there were coffee and energy drinks in the vehicle; a container of Febreze air freshener was observed in the vehicle; a box of sandwich baggies was in the glove box;[3] Nettles was overly cooperative and nervous; the passenger refrained from making any eye contact; and Nettles had "odd" travel plans. Nettles was about two hours from his home in Virginia, claimed to be traveling to a co-worker's home for a social gathering, but did not know his destination without checking his GPS device. *See* "Memorandum in Opposition to Motions to Suppress" (ECF 24 at 4–6).

At approximately 10:54 p.m., a K-9 scan was conducted on the vehicle. The scan resulted in a positive alert on the driver's side door. Nettles then told MSP that in the center

---

[2] Unless noted otherwise, the facts regarding Nettles's criminal activity are derived from Nettles's Plea Agreement, to which he stipulated. *See* Attachment A to Plea Agreement, ECF 57-1 at 9.

[3] It is not clear from the record how MSP became aware of the box of sandwich baggies in Nettles's glove box.

- 2 -

console there was a small amount of marijuana, which he had smoked earlier in the evening. Based on this information, MSP searched the vehicle, resulting in the discovery of two loaded firearms bearing obliterated serial numbers.

On July 13, 2012, Nettles, through counsel, filed a "Motion to Suppress Tangible and Derivative Evidence" with respect to MSP's stop and search of his vehicle. ECF 17. He argued that the police lacked the reasonable suspicion or probable cause necessary to extend the traffic stop to include a K-9 scan and, as a result, Nettles's constitutional rights were violated. *Id.* He also moved to suppress statements he made to law enforcement. ECF 18. The Government responded to Nettles's motion (ECF 24), and Nettles replied (ECF 29).

The suppression motions were scheduled for a hearing on December 11, 2012. ECF 21. However, no motion hearing was held, because Nettles entered into a plea agreement. *See* ECF 57-1; *see also* ECF 31 (same). In the plea agreement, dated December 10, 2012 and signed by Nettles on December 11, 2012, Nettles agreed to plead guilty to Count One of the Indictment, charging Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g). The plea was entered pursuant to Fed. R. Crim. P. 11(c)(1)(C) (commonly referred to as a "C plea"). *See* Plea Agreement ¶ 9. In entering into the Plea Agreement, Nettles stipulated that he knowingly possessed the two firearms recovered from his vehicle, despite having previously been convicted of a crime punishable by more than one year imprisonment. The parties also agreed that a sentence of 30 months' imprisonment was the appropriate disposition. *Id.* That sentence was below the advisory sentencing guidelines range of 46 to 57 months, based on an offense level of 21 and a criminal history category of III. *See* Sentencing Transcript at 4.

Notably, the offense level of 21 was based on a three-level deduction for Nettles's acceptance of responsibility and his timely notification of intention to plead guilty. *See* Plea Agreement ¶ 6(b). If Nettles had litigated the motions, the Government might not have agreed to that three-level deduction. In that event, Nettles would have had an offense level of 24. With his criminal history, which includes a second degree murder conviction in 1994, *see* ECF 34 at 6–7. Nettles's advisory guidelines range could have been 63 to 78 months. Obviously, a sentence of 30 months is well below the bottom of the advisory guidelines applicable to an offense level of 24 and a criminal history category of III.[4]

The Court conducted a Rule 11 guilty plea proceeding on December 11, 2012. At the rearraignment, Nettles was sworn. Among other things, he acknowledged his waiver of the right to appeal, except as noted above. *See* ECF 57-2, Rearraignment Transcript at 15–16. Additionally, Nettles was advised by the Court, and he acknowledged that, by virtue of his guilty plea, he waived any challenges and defenses he had previously asserted, including his motion to suppress evidence related to the traffic stop. *Id.* at 24–25. Nettles also indicated that he was satisfied with the legal representation provided by his attorney. *Id.* at 5.

Sentencing was held on March 15, 2013. In urging the Court to adopt the recommended sentence of 30 months, the Government stated that the plea agreement was made in "consideration [of] the various aspects of th[e] case and the Fourth Amendment issues" raised in Nettles's motion to suppress. Sentencing Transcript at 6 (ECF 57-4). Similarly, Nettles's attorney said: "I think, in many ways, this is the quintessential compromise, where it was a

---

[4] Under ¶ 15 of the Plea Agreement, in the event the Court rejected the terms of the "C plea," Nettles was entitled to withdraw his guilty plea. *See* Plea Agreement ¶ 13. In accepting the Plea Agreement, Nettles generally agreed to waive his right to appeal. However, he reserved his right to appeal any term of imprisonment in excess of 30 months. *Id*. ¶ 13.

careful balancing of risks. Both sides believed that they would prevail [at the motion hearing] and both sides were cognizant that they could lose." *Id.* The Court acknowledged that the case involved "a lot of issues," there was "risk on both sides," and the case "could have gone either way." *Id.* at 8. Accordingly, the Court adopted the terms of the C plea and sentenced Nettles to 30 months in federal prison, consistent with the parties' agreement. *See* Judgment (ECF 39); Statement of Reasons (ECF 40); Sentencing Transcript (ECF 57-4).

At the conclusion of the sentencing hearing, Nettles was advised by the Court that, to the extent that the sentence did not exceed 30 months, he had waived many of his rights to appeal. But, he was told that he had 14 days to file an appeal if he believed that he had grounds to do so. *See* Sentencing Transcript at 12.

Seven days later, on March 22, 2013, Nettles sent a letter to his attorney stating that the attorney had broken a promise to visit Nettles during the week of March 18–22.[5] *See* Motion to Vacate, Ex. C at 11 (ECF 54). Nettles also wrote that he had planned to notify counsel of his intent to appeal during that meeting, and that he would be forced to file his own notice of appeal if counsel did not file the appeal and send a copy to Nettles before the 14-day deadline. *Id.* On March 27, 2013, defense counsel filed a notice of appeal. ECF 41. Nevertheless, Nettles filed a

---

[5] Nettles previously sent two other letters to his attorney. First, on January 31, 2013, Nettles wrote a letter requesting a transcript of the "motion hearing," because he believed that he had not been advised of all of his rights. *See* Motion to Vacate, Ex. A at 9 (ECF 54). Based on the date and subject matter of the letter, it appears that Nettles was referring to his rearraignment on December 11, 2012. On February 27, 2013, Nettles sent another letter to defense counsel, requesting a copy of the rearraignment transcript in preparation for the sentencing hearing. *See* Motion to Vacate, Ex. B at 10 (ECF 54). In addition, Nettles stated that he would ask for a postponement and file a motion for ineffective assistance of counsel if the transcript was not received. Although neither side has presented evidence of any return correspondence from Nettles's attorney, Nettles did not move for a postponement.

separate notice of appeal on the same day. ECF 43. Nettles's two notices of appeal resulted in a single direct appeal. *See* ECF 45.

On March 28, 2013, the Fourth Circuit appointed the Federal Public Defender for the District of Maryland to represent Nettles on appeal. ECF 46. On April 12, 2013, the Clerk for the Fourth Circuit noted that Nettles's attorney had requested transcripts from Nettles's rearraignment and sentencing. ECF 47. Both transcripts were produced on April 17, 2013. ECF 48; ECF 49.

On April 18, 2013, the Fourth Circuit granted the Federal Public Defender's motion to withdraw as Nettles's appellate counsel and appointed new counsel. ECF 51. According to Nettles, on July 7, 2013, his successor attorney suggested that Nettles move voluntarily to dismiss the direct appeal due to Nettles's waiver in the Plea Agreement of his appellate rights and the lack of any appealable grounds. *See* ECF 59, "Attachment 3" at 19. The new attorney also advised Nettles that he would likely have a greater chance of success in pursuing a 28 U.S.C. § 2255 Motion to Vacate based on Nettles's trial counsel "failing to hold an evidentiary hearing on the motions to suppress [Nettles's] statements and to suppress the evidence, or of any other course of dealing that does not appear on the record that influenced [Nettles's] plea of guilty." *Id.*

On July 9, 2013, the Fourth Circuit granted Nettles's motion to voluntarily dismiss his appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. ECF 52. The Motion to Vacate followed.

Additional facts will be presented in the Discussion.

## Discussion

The core of Nettles's allegations is that he received ineffective assistance of counsel from his trial attorney and that his guilty plea was involuntary due to the actions of defense counsel and the Court.

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence" if the petitioner shows "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." Nettles advances seven grounds to support his Motion to Vacate: (1) "Counsel performed deficiently by failing to hold an evidentiary hearing on [the] motion to suppress the evidence and statements"; (2) "Counsel was unconstitutionally ineffective by advising Petitioner to not withdraw his plea knowing there was a meritorious Fourth Amendment challenge"; (3) "Counsel provided unreasonable professional assistance by advising that the plea agreement covers the elements of the charge . . ."; (4) "Counsel was unconstitutionally ineffective in failing to consult with Petitioner regarding his desire to file a[] notice of appeal"; (5) the Court failed to give Nettles "'real notice' of the nature of the offense and the critical elements of the offense prior to accepting [his] guilty plea"; (6) Nettles's guilty plea "was involuntary because the Court failed to apprise [him] of the nature of the charges to which [he] pleaded guilty"; and (7) the Court failed "to inform [Nettles] [of] the [G]overnment's right, in a prosecution for perjury or false statement, to use against [Nettles] any statement that [he] g[a]ve[] under oath." Motion to Vacate at 5–7. These grounds are discussed, in turn.

*A. Ineffective Assistance of Counsel*

A violation of the Sixth Amendment right to effective assistance of counsel is a well-recognized basis for relief under § 2255. *See generally Missouri v. Frye*, ____ U.S. ____, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010). To successfully challenge a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *See, e.g.*, *Chaidez v. U.S.*, ____ U.S. ____, 133 S. Ct. 1103, 1107–08 (2013); *Lafler*, 132 S. Ct. at 1384; *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013); *see also Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

First, the petitioner must show that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases," *Strickland*, 466 U.S. at 687, and was "below an objective standard of reasonableness," measured by "prevailing professional norms." *Id.* at 688. "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 446 U.S. at 689).

Second, the petitioner must show that counsel's deficient performance "prejudiced [his] defense." *Strickland*, 446 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 697; *see Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (stating that, under the second prong, the petitioner must prove that the "result of the

proceeding was fundamentally unfair or unreliable"). A court may determine whether prejudice has been shown before judging counsel's conduct for deficiencies. Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 446 U.S. at 670.

I conclude that Nettles is not entitled to habeas relief based on ineffective assistance of counsel. Nettles was represented by an experienced attorney in the Office of the Federal Public Defender. His claims cannot overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008) (quoting *Strickland*, 446 U.S. at 689). Put another way, Nettles is unable to demonstrate that counsel's performance was deficient, and he has failed to show prejudice.

1.

Nettles first contends that counsel erroneously failed to pursue an evidentiary hearing in connection with the motions to suppress evidence and statements filed by defense counsel. Reply at 5. In support of his claim, Nettles notes that a suppression hearing was scheduled for March 11, 2012, and that his counsel knew of Nettles's desire to proceed with the motions to suppress, but "for whatever personal reasons decided not to proceed and advise[d] the Petitioner to sign the plea agreement." *Id.* at 6–8. Nettles also alleges that defense counsel had a conflict of interest that led him to "pressure or coerce the client to accept a plea to protect the interests of others including counsel." *Id.* at 6.

At the outset of the rearraignment, the defendant was sworn. *See* ECF 57-2 at 2. The Court explained to Nettles the purpose of the questions it would be asking, *id.* at 3, and made

clear to Nettles that he should let the Court know if he did not understand a question posed by the Court or wanted the Court to repeat or rephrase a question. *Id.* at 3. The Court also advised Nettles of the charges and the elements. *Id.*

As to the alleged conflict of interest, Nettles has made only conclusory statements about purported "personal reasons" affecting his attorney's decision to forego the evidentiary hearing in favor of a plea agreement. "Courts have concluded that unsupported and conclusory allegations of ineffective assistance of counsel are subject to dismissal." *Dawson v. United States*, 2012 WL 1100627 *2 (D. Md. Mar. 30, 2012); *United States v. Reed*, 538 Fed. Appx. 265, 266 (4th Cir. 2013).

Likewise, Nettles presents no evidence to support his claim that he was coerced or pressured into signing the plea agreement or that his attorney ignored any requests to proceed with the motions hearing. Indeed, these claims fly in the face of the attestations made by Nettles, under oath at his rearraignment, concerning his waiver of all defenses, the voluntariness of his guilty plea, and his satisfaction with his attorney's performance. The following exchanges from the guilty plea proceeding illustrate the lack of merit as to Nettles's allegations:

> Court: And without telling me the particulars of any of your discussions, in general, have you had ample time to discuss with your lawyer all of your rights in connection with this matter, including the right to go to trial, what the government's case would consist of if there were a trial, what, if any, defenses you might present or challenges to the evidence you might present, what would happen if you were convicted, your rights to an appeal, matters of this type? Have you fully discussed them with your lawyer?
>
> Nettles: Yes, Your Honor.
>
> Court: Are you satisfied with the legal representation provided to you by [defense counsel]?
>
> Nettles: Yes, Your Honor.

Court: Is there anything you asked [your lawyer] to do that he failed to do?

Nettles: No, Your Honor.

Court: Is there anything you didn't want him to do that he went ahead and did, anyway?

Nettles: No, Your Honor.

ECF 57-2, Rearraignment Transcript at 5.

\*\*\*

Court: So, in this case, we had set for this morning a motion hearing based on several motions that your lawyer filed. We're not having that motion hearing. That means you are waiving or giving up all of the challenges you had asserted in those motions. Did you understand this?

Nettles: Yes, Your Honor.

Court: I don't know how I would have ruled. But I need to be sure you understand, when you plead guilty, you give up all defenses to the charges. Did you realize this?

Nettles: Yes, Your Honor.

Court: A defense could be legal, factual, or both. To illustrate -- and these are some of the motions that were filed -- you could have a challenge to a statement that was obtained from you, claiming that the police interrogated you without advising you of your constitutional rights when you were in custody. Or you might have a challenge to a search. For example, you might claim that a search was unlawful because it was in violation of your rights under the Fourth Amendment. Or you might have a claim that it isn't you at all. These weren't your weapons. They belong to someone else.

Whatever your defense might be, and you might have more than one defense, you give them up when you plead guilty. Did you know this?

Nettles: Yes, Your Honor.

Court: Other than the promises to you set out in this plea agreement, has anybody made any promises or assurances to you in an effort to induce you to plead guilty?

Nettles: No, Your Honor.

> Court: Has anybody forced you, threatened you, or coerced you in any way in order to induce you to plead guilty?
>
> Nettles: No, Your Honor.
>
> Court: Are you pleading guilty of your own free will?
>
> Nettles: Yes, Your Honor.

*Id.* at 24–25.

In *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), the Court noted that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Nettles's allegations here are plainly contradicted by his earlier sworn statements. Therefore, Nettles's claim that he was coerced into signing the Plea Agreement fails.

As to defense counsel's decision to forego the suppression hearing and recommend acceptance of the plea agreement, the record reflects that Nettles's attorney made a strategic decision to leverage the uncertainty of the outcome of the suppression motions into a plea agreement that almost guaranteed Nettles a sentence below the advisory sentencing guidelines range. And, that strategy was successful. Nettles received a sentence significantly below the bottom of the advisory sentencing guidelines range, and that range was based on a three-level deduction because Nettles accepted responsibility for his conduct and agreed to plead guilty. *See* Plea Agreement ¶ 6(b). Indeed, the agreed-upon sentence of 30 months is about half the length of the sentence at the upper end of the advisory guidelines range for an offense level of 21.

Conversely, if Nettles had not pleaded guilty, he would not have been entitled to the three-level deduction from the offense level. This means Nettles would have had an offense

level of 24, with a higher advisory sentencing guidelines range. Nettles's sentence, pursuant to the C plea, was less than half of the bottom of the range based on an offense level of 24. Thus, the plea agreement accurately reflects that defense counsel leveraged the uncertainty of the outcome of the suppression motions.

The motion to suppress the search presented a question under the Fourth Amendment. "When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment." *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011) (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred", *Whren*, 517 U.S. at 810, or the stop is based on reasonable, articulable suspicion. *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014). Because there was no dispute as to the legality of the initial traffic stop of Nettles's vehicle, *see* ECF 29, the only issue would have been whether MSP's subsequent actions in detaining the vehicle until a drug sniffing dog arrived were "justified by at least a reasonable suspicion of other criminal activity." *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2012).

To demonstrate such a suspicion, the officer must "point to 'specific and articulable facts which, taken together with rational inferences from those facts evince more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (internal quotations omitted)). This is an objective analysis, in which "courts must 'consider the totality of the circumstances' and 'give due weight to common sense judgments reached by officers in light of their experience and training.'" *United States v. Mason*, 628 F.3d 123, 128 (4th Cir. 2010)

(quoting *United States v. Perkins*, 363 F.3d 217, 321) (4th Cir. 2004)). To that end, "[t]he Supreme Court has recognized that factors consistent with innocent travel can, when taken together, give rise to reasonable suspicion." *Digiovanni*, 650 F.3d at 511 (citing *United States v. Sokolow*, 490 U.S. 1, 9 (1989)).

Here, as noted previously, MSP relied on the following factors in prolonging the stop: a strong smell of cologne coming from the vehicle; the vehicle was dirty and cluttered; there were coffee and energy drinks in the vehicle; a container of Febreze air freshener was observed in the vehicle; a box of sandwich baggies was in the glove box; Nettles was overly cooperative and nervous; the passenger refrained from making any eye contact; and Nettles was driving at night with an "odd" travel itinerary.

In support of the motion to suppress the search, Nettles's attorney cited cases suggesting that some of these factors were not legitimate, *see United States v. Richardson*, 385 F.3d 625, 630–31 (6th Cir. 2004) (questioning the reliability of a driver or passenger's nervousness); drew parallels with the *Digiovanni* case, which involved a successful motion to suppress; and attempted to distinguish several unfavorable decisions. *See* ECF 29. He disputed the rationale underlying the Government's claims of suspicion surrounding the presence of such innocuous items as the energy drinks, the Febreze container, the sandwich bags, and the odor of cologne. *Id.* at 7.

On the other hand, the Government pointed to similarities between the factors present in Nettles's stop and those in previous stops upheld as reasonable. *See, e.g., United States v. Briasco*, 640 F.3d 857, 860 (8th Cir. 2011) (listing the strong odor of air freshener, nervousness, and vague travel descriptions as relevant factors); *United States v. Johnson*, 452 Fed. Appx. 219,

225–26 (3d Cir. 2011) (listing nervousness and the presence of sandwich bags as factors in judging reasonable suspicion); *United States v. Foreman*, 369 F.3d 776, 784 (4th Cir. 2004) (listing nervousness and "unusual" travel plans as relevant factors in judging reasonable suspicion). The Government also endeavored to differentiate Nettles's stop from that in *Digiovanni*. ECF 24 at 17–22.

In light of the foregoing, it is clear that there was precedential support for both admissibility and suppression. Nettles's attorney, the Government, and the Court each recognized that neither side had a clear path to success under the Fourth Amendment analysis and that the result was uncertain. And, if Nettles did not agree to plead, and was unsuccessful at the suppression motion, he risked a substantially higher guidelines range. As such, it was eminently reasonable for Nettles's attorney to recommend the plea agreement, which rewarded Nettles for his guilty plea and his decision not to pursue the suppression motions. Accordingly, I cannot say that counsel's performance was constitutionally deficient.

2.

Nettles next contends that counsel was ineffective because he advised Nettles not to withdraw his guilty plea in order to pursue the motions to suppress. "A defendant has no 'absolute right' to withdraw a guilty plea, and the district court has discretion to decide whether a 'fair and just reason' exists upon which to grant a withdrawal." *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003) (quoting *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000)). Nettles presents no basis to support the claim that he had "a fair and just reason for requesting withdrawal," and has therefore not made any showing that he would have been able to withdraw his guilty plea. Fed. R. Crim. P. 11(d)(2)(B). Nettles has not pointed to any

legitimate defects in the Court's Rule 11 colloquy or any other factor that would justify withdrawal of his guilty plea. Moreover, Nettles has not shown that withdrawing the guilty plea and proceeding to the hearing on the motions to suppress would have resulted in an acquittal or a reduced sentence. As such, Nettles has not shown that he was prejudiced by his attorney's conduct.

3.

Nettles claims that his counsel was ineffective because counsel "did not review the plea agreement with the Petitioner thoroughly" and "never explained the 'affecting interstate commerce element.[']" Reply at 12–13. The plea agreement specifically sets forth the elements of the offense, however. *See* ECF 57-1, Plea Agreement at ¶ 2. Moreover, Nettles signed the plea agreement, acknowledging that he reviewed it and understood it. *See* ECF 57-1, Plea Agreement at 8.

And, as shown, *infra,* even if Nettles's factual contention were true, the Court expressly advised Nettles at the Rule 11 hearing of the elements of the crime to which he was pleading guilty, including the interstate commerce element. After the Court so advised Nettles, he affirmatively stated that he understood the elements. *See* ECF 57-2, Rearraignment Transcript at 7.[6] Again, this representation, made by Nettles under oath during the Rule 11 colloquy, is presumed to be truthful. *Lemaster*, 403 F.3d at 222.

---

[6] The following exchange is relevant, ECF 57-2, Rearraignment Transcript at 7:

"Court: Do you understand the essential elements as I just outlined them?

Nettles: Yes, Your Honor."

In addition, the plea agreement included Attachment A, the Statement of Facts. *See* ECF 57-1, Plea Agreement at 9. In the Statement of Facts, to which Nettles expressly stipulated, *id.* at 10, Nettles agreed that "[b]oth of the firearms . . . were manufactured outside the State of Maryland and therefore affected interstate commerce prior to their recovery in this state." *Id.* at 9. At the end of the Statement of Facts, Nettles had signed the document, stating he "carefully reviewed" it, understood it, and voluntarily agreed to it. *Id.* at 10. Therefore, Nettles has not shown that his defense was prejudiced in any way.

4.

Nettles contends that his attorney was unconstitutionally ineffective for failing to consult with him regarding his desire to appeal. Regardless of the veracity of his contention, no harm resulted because two notices of appeal were timely filed, including one by Nettles's attorney. *See* ECF 41; ECF 43. Moreover, Nettles cannot show any prejudice because he generally waived his right to appeal at his rearraignment, and therefore any appeal would have been futile. *See* Rearraignment Transcript at 15–16; Plea Agreement ¶ 13. Indeed, Nettles moved to voluntarily dismiss his appeal for this very reason. *See* "Attachment 3" (ECF 59) at 19; ECF 57-3. Clearly, Nettles suffered no prejudice.

*B. Alleged Inadequacy of the Rule 11 Hearing*

In his fifth and sixth claims, Nettles contends that his guilty plea was not voluntary. He complains that the Court failed to ensure that he "received 'real notice of the true nature of the charge against him'", *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)), and that the Court did not advise Nettles that the

Government could use any statements he made under oath against him in a later trial for perjury or false statement. ECF 54, Motion to Vacate at 7.

Before accepting a criminal defendant's guilty plea, a court must "inform the defendant of, and determine that the defendant understands", in addition to other matters, "the nature of each charge to which the defendant is pleading" and "the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath . . . ." Fed. R. Crim. P. 11(b)(1). A court's failure to take such steps can be grounds for relief under 28 U.S.C. § 2255. *See generally McCarthy v. United States*, 394 U.S. 459 (1969); *United States v. Newsome*, 232 F.3d 891 (4th Cir. 2000).

Nettles's argument is plainly contradicted by the lengthy colloquy conducted by the Court during his rearraignment. Among other things, the Court advised Nettles of the elements of the offense that the Government would have had to prove beyond a reasonable doubt at trial in order to convict Nettles. *See* Rearraignment Transcript at 7. The Court stated, in part, *id.*:

> The essential elements are what the government would have to prove beyond a reasonable doubt if this case went to trial before you ever could be convicted. And they are as follows: That on or about December 9, 2011, in the District of Maryland, you had been convicted, previous to that date, in any court, of a crime punishable by imprisonment for a term exceeding one year, and the State had not restored your civil rights following the conviction. And you knowingly possessed a firearm charged in the indictment, and this possession was in or affecting interstate commerce.

Nettles was asked whether he understood the essential elements of the offense, and he responded affirmatively. *Id.*; *see also* n.6, *supra.* The Court also directed Nettles's attention to Paragraph 2 of the Plea Agreement, which detailed the essential elements of the offense, *id.*, and which Nettles stipulated he had reviewed and understood in full. Plea Agreement at 8.

For the same reasons, there is no merit to Nettles's claim that the Court failed to inform him of the Government's right to use any statement given by him under oath against him in a future prosecution for perjury or false statement. The Court expressly informed Nettles of this fact at the beginning of his rearraignment by stating, Rearraignment Transcript at 3:

> Let me just make sure you understand that you just took an oath to tell the truth. That means that you must answer my questions truthfully. And if you were to fail to do that, it's possible that you would be subjecting yourself to further prosecution for charges such as perjury or false statement.

Nettles then stated that he understood. *Id* at 4. Accordingly, Nettles's Rule 11 claims are groundless.[7]

As noted above, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 222. Accordingly, because Nettles presents no extraordinary circumstances and his claims are patently unsupported by the facts, I will deny the Motion to Vacate.

*C. Certificate of Appealability*

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, the Court is required to issue or deny a COA when it enters a final order adverse to the applicant. *See Jackson v. United States*, Civ. No. PJM-12-421, 2012 WL 869080, *1 (D. Md. Mar. 13,

---

[7] Nettles claims that he merely answered affirmatively to these questions because his attorney advised him to "answer '[y]es, Your Honor' to the Judge's questions and she will accept the plea" and that he "was under the impression that saying anything other th[a]n '[y]es, Your Honor'" would result in him "be[ing] charged for not going along with the plea agreement." Reply at 16 (first and third alterations in original). However, this claim is contradicted by the fact that Nettles did not answer affirmatively to every question put to him at the rearraignment. *See* ECF 57-2, Rearraignment Transcript at 4.

2012). Nettles's Motion provides no basis for issuance of a COA. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see also Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). In my view, reasonable jurists would not find Nettles's claims debatable. Therefore, a Certificate of Appealability is DENIED.[8]

## Conclusion

For the foregoing reasons, the Court will deny the Motion. A separate Order follows.

Date: April 11, 2014

/s/
Ellen Lipton Hollander
United States District Judge

---

[8] Under Rule 11(a), if the district court denies a COA, a party may seek a certificate from the Court of Appeals under Federal Rule of Appellate Procedure 2. However, the petitioner may not appeal the district court's denial of the COA.